UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| S. Y.,<br><br>            Plaintiff,<br><br>     v.<br><br>SECRETARY OF THE DEPARTMENT<br>OF HOMELAND SECURITY (DHS), et al.,<br><br>            Defendants. | Case No. 25-cv-01017-YGR   (LJC)<br><br>**ORDER REGARDING MOTION FOR DISCOVERY**<br><br>Re: Dkt. No. 26 |

Plaintiff S.Y. sued the Secretary of the Department of Homeland Security (DHS), the Director of the San Francisco Asylum Office, and the Director of the United States Citizenship and Immigration Services (USCIS) (collectively, Defendants), claiming that Defendants had unreasonably delayed adjudicating his pending asylum application. *See* ECF No. 1 (Compl.). Plaintiff now seeks discovery from Defendants. *See* ECF No. 26. For the following reasons, Plaintiff's motion for discovery is GRANTED IN PART. The parties shall meet and confer by July 15, 2026 to narrow the scope of Plaintiff's discovery requests and shall file a joint status report by July 22, 2026 regarding the status of their negotiations.

## I.      BACKGROUND

Plaintiff, a citizen of Ethiopia, applied for asylum in January 2022. Compl. ¶ 1. At the time he filed his lawsuit in January 2025, he had been waiting for an asylum interview for over three years. *See id.* ¶¶ 1, 18. He alleges that USCIS's policy of adjudicating asylum applications through "last-in, first-out" (LIFO) scheduling has led to an unreasonable delay in adjudication of pending applications, including his. *Id.* ¶¶ 12-15. He further claims that, at the time he filed his lawsuit, the San Francisco Asylum Office had "stopped scheduling any asylum interviews for any applicants other than Afghan nationals." *Id.* ¶ 17. Defendants moved for summary judgment on

July 18, 2025, following the Northern District's Procedural Order for immigration mandamus cases. *See* ECF Nos. 5, 20. Defendants argued that they are entitled to summary judgment because Defendants have not unreasonably delayed the adjudication of Plaintiffs' asylum application based on the six-factor test adopted by the Ninth Circuit, referred to as the *TRAC* factors. *See* ECF No. 20 at 10, 20 (citing *Brower v. Evans*, 257 F.3d 1059, 1068 (9th Cir. 2001) (relying upon *Telecommunications Research & Action Center (TRAC) v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984)). Plaintiff's asylum interview occurred on July 25, 2025 and the parties then stipulated to stay the case until November 22, 2025 in order to pursue an administrative resolution of Plaintiff's pending application. *See* ECF No. 24. The parties evidently did not reach an administrative resolution and Plaintiff proceeded to file the instant motion for discovery under Federal Rule of Civil Procedure 56(d). *See* ECF No. 26. The matter was referred to the undersigned magistrate judge for resolution of the pending motion for discovery. *See* ECF Nos. 30, 31.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) permits parties to move for summary judgment. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The nonmovant may oppose the motion or, if it cannot present facts necessary to support its opposition, file a motion for discovery under Rule 56(d). "If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition," the court may defer ruling on a motion for summary judgment, deny the motion for summary judgment, "allow time to obtain affidavits or declarations or to take discovery," or issue any other order, as appropriate. Fed. R. Civ. P. 56(d). Thus, to obtain relief under Rule 56(d), a nonmovant "must show: (1) it has set forth in affidavit form the specific facts it hopes to elicit from further discovery; (2) the facts sought exist; and (3) the sought-after facts are essential to oppose summary judgment." *Fam. Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008). "The purpose of Rule 56(d) relief is to prevent the nonmoving party from being 'railroaded' by a summary judgment motion that is filed too soon after the start of a lawsuit for the

2

nonmovant to properly oppose it without additional discovery." *Hollyway Cleaners & Laundry Co., Inc. v. Cent. Nat'l Ins. Co. of Omaha, Inc.*, 219 F. Supp. 3d 996, 1003 (C.D. Cal. 2016) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986)).

**III.   ANALYSIS**

Plaintiff requests that the Court permit "90 days of narrowly tailored, non-deliberative discovery limited to objective queue data, final/operative scheduling policies, circuit-ride capacity, and Plaintiff's case-specific event logs and any inter-agency holds" so that he may obtain evidence to oppose Defendants' motion for summary judgment.  ECF No. 26 at 2.  Although not models of clarity, Plaintiff's motion and his counsel's supporting declaration explain that Plaintiff needs to obtain "evidence of [USCIS's] actual adjudication processes" and their effectiveness—including the rate that backlogged cases are adjudicated at the San Francisco Asylum Office, the number of asylum officers "assigned to complete affirmative asylum cases pending in the backlog"—in order to rebut Defendants' claim that their current processing method is a rule of reason.  ECF No. 26-1 (Rosché Decl.) ¶ 5(a), 9.  Defendants oppose the motion for discovery, arguing that discovery is generally not permitted in immigration mandamus cases and that Plaintiff has not identified disputes issues of material fact that would prevent the Court from granting the pending motion for summary judgment.  ECF No. 27 at 6-7.[1]

The undersigned disagrees with Defendants on both points.  First, though Defendants are correct that the Northern District's immigration scheduling order does not provide deadlines for discovery, neither the scheduling order nor General Order 61, which is the basis for the scheduling order, prohibits a party from seeking discovery under Rule 56(d) of the Federal Rules of Civil Procedure.  *See* ECF No. 5; *Munoz-Barba v. Mayorkas*, No. 23-cv-03675-JCS, 2024 WL 2818850, at *11 (N.D. Cal. June 3, 2024).

Second, the undersigned finds that Plaintiff has shown, albeit sparingly, that he "cannot present facts essential to justify [his] opposition" to the motion for summary judgment without

---

[1] Defendants also argue that the undersigned should grant their motion for summary judgment. *See id.* at 12-17.  Ruling on the summary judgment motion is outside the scope of the discovery referral.  *See* ECF No. 30.

United States District Court
Northern District of California

discovery.  Fed. R. Civ. P. 56(d).  Defendants argue they are entitled to summary judgment because they have not unreasonably delayed adjudicating Plaintiff's asylum application.  *See* ECF No. 20 at 20.  When evaluating whether agency action has been unreasonably delayed, courts in the Ninth Circuit consider the following *TRAC* factors:

> (1) the time agencies take to make decisions must be governed by a rule of reason;
> (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
> (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
> (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;
> (5) the court should also take into account the nature and extent of the interests prejudiced by the delay; and
> (6) the court need not find any impropriety lurking behind agency lassitude.

*TRAC*, 750 F.2d at 80; *see Brower*, 257 F.3d at 1068.  The first *TRAC* factor—whether the timeliness of an agency's action is governed by a rule of reason—is the most important.  *In re A Cmty. Voice*, 878 F.3d 779, 786 (9th Cir. 2017).  In assessing the first factor, courts examine whether "an agency's response time . . . is governed by an identifiable rationale."  *Ctr. for Sci. in the Pub. Int. v. U.S. Food & Drug Admin.*, 74 F. Supp. 3d 295, 300 (D.D.C. 2014). "Repeatedly, courts in this and other circuits have concluded that a reasonable time for agency action is typically counted in weeks or months, not years."  *In re Nat. Res. Def. Council, Inc.*, 956 F.3d 1134, 1139 (9th Cir. 2020) (internal quotations omitted).  "Because the *TRAC* factor analysis is necessarily fact-intensive," some district courts have permitted limited discovery prior to determining whether a delay is unreasonable.  *Tailawal v. Mayorkas*, No. LACV2201515, 2022 WL 4493725, at *4 (C.D. Cal. Aug. 18, 2022); *Salarian v. Blinken*, No. 23-cv-1315, 2024 WL 4008758, at *4 (S.D. Cal. Aug. 30, 2024); *Munoz-Barba*, 2024 WL 2818850, at *14.

Defendants urge the undersigned to hold that no discovery is needed to find an absence of unreasonable delay in adjudicating Plaintiff's application.  *See* ECF No. 27 at 8.  Addressing the first factor, Defendants contend that their method for processing asylum applications is governed by a rule of reason.  ECF No. 20 at 21-24.  They explain that USCIS employs a "two-track"

United States District Court
Northern District of California

method for adjudicating the large number of pending asylum applications. *See id.* at 16. On the first track, USCIS adjudicates asylum claims using a last-in, first-out (LIFO) scheduling method, first prioritizing applications that had been scheduled for interviews but then required rescheduling, then prioritizing applications pending twenty-one days or fewer since filing, and lastly prioritizing all other pending applications, starting with newer filings and working backwards. *Id.* at 14; ECF No. 20-1 (Lassen Decl.) ¶ 25. USCIS re-implemented LIFO in 2018 to "identify non-meritorious asylum claims" quickly and deter individuals from filing frivolous asylum claims in order to obtain work authorization. ECF No. 20-1 ¶¶ 24, 30. "On the second track, USCIS assigns some of its Asylum Officers to complete affirmative asylum cases pending in the backlog, starting with the oldest cases and working forward." *Id.* ¶ 32. Defendants argue that their two-track method, which combats "frivolous, fraudulent, or meritless asylum applications through LIFO scheduling of the newest applicants while concurrently adjudicating the longest pending asylum applications" is a "purposeful and rational" approach that satisfies the "rule of reason" requirement. ECF No. 20 at 22.

Many district courts have determined that USCIS's two-track adjudication process constitutes a rule of reason without permitting additional discovery. *See Kyaw v. Jaddou,* No. 24-cv-06326-VC, 2025 WL 1310748, at *1 (N.D. Cal. May 6, 2025); *Kurt v. Mayorkas*, 24-cv-02792-SK, 2024 WL 5161950, at *4 (N.D. Cal. Dec. 18, 2024). But the undersigned finds the reasoning in *Munoz-Barba* more persuasive. *See* 2024 WL 2818850, at *11. In that case, as here, the defendants moved for summary judgment, arguing that they had not unreasonably delayed adjudicating the plaintiffs' asylum applications. *Id.* at *1. The plaintiffs moved for discovery under Rule 56(d), seeking discovery that would "allow them to address the *TRAC* factors." *Id.* at *5. Judge Spero granted the plaintiffs' motion in part. He reasoned:

> The question of whether the delay in a specific case is unreasonable turns on the particular facts of the case. *See Wurtz v. USCIS*, C-20-2163 JCS, N.D. Cal., dkt. no. 27 (Aug. 12, 2020) at p. 6 ("This Court agrees with the general approach that challenges to reasonableness of delay are best considered on an evidentiary record, and respectfully disagrees with the *Ou* court's conclusion that other courts' decisions on the distinguishable facts before them support finding a particular period of delay reasonable as a matter of law"); *Gelfer v. Chertoff*, No. C06-06724 WHA, 2007 WL 902382, at *2 (N.D. Cal. Mar. 22,

United States District Court
Northern District of California

2007) ("What constitutes an unreasonable delay in the context of immigration applications depends to a great extent on the facts of the particular case."). Therefore, the fact that other courts have found delays of similar length to be reasonable does not compel the conclusion that Plaintiffs here will not be able to establish that under the specific facts of this case a similar delay may be unreasonable and thereby defeat Defendant's Summary Judgment Motion.

Similarly, Defendant's reliance on the "unbroken line of authority holding that USCIS's [LIFO] order satisfies a rule of reason," Opposition at 8, is misplaced. While it is true that numerous courts have found that LIFO is a "rule of reason[,]" *see*, *e.g.*, *Attia v. Mayorkas*, No. 23-cv-869, slip op. (C.D. Cal. Oct. 18, 2023); *Teymouri v. U.S. Citizenship & Immigr. Servs.*, No. CV 22-7689 PA (JCX), 2022 WL 18717560, at *4 (C.D. Cal. Jan. 31, 2022); *Zhang v. Wolf*, No. 19-cv-5370, 2020 WL 5878255 (E.D.N.Y. Sept. 30, 2020); *Varol v. Radel*, 420 F. Supp. 3d 1089, 1097 (S.D. Cal. 2019), none of these cases holds that LIFO will *invariably* be a rule of reason, as a matter of law, no matter what circumstances may arise. Indeed, UCSIS itself recognized that LIFO did not make sense in 2012, when it shifted to FIFO [first-in, first-out] because "most Asylum Officers were assigned to address the surge of credible fear, reasonable fear cases, and unaccompanied child cases at the border" and "very few affirmative cases could be adjudicated in any event." Lafferty Decl. ¶ 20.

*Id.* at *14.

As in *Munoz-Barba*, Defendants' evidence filed in support of their motion for summary judgment suggests that, under the current circumstances, the two-track method is not achieving its stated goals. Brett Lassen, Acting Chief of USCIS's Asylum Division, attests that USCIS switched back to LIFO scheduling in 2018 to deter filing of non-meritorious applications and slow the growth of the backlog of asylum applications. ECF No. 20-1 ¶ 24. Per his declaration, "upon the return to LIFO scheduling," receipts of asylum applications decreased considerably, from 141,696 in the 2017 fiscal year down to 59,416 in the 2021 fiscal year. *Id.* ¶ 26. But "[i]n recent years," the number of asylum applications increased while "insufficient staffing, insufficient physical office space, and shifting geopolitical realities . . . along with the surge in litigation" required reassignment of asylum officers to other urgent caseloads, drastically decreasing "the number of affirmative asylum interviews scheduled and applications adjudicated." *Id.* ¶¶ 28-29. He attests that, "[a]s a result of these changes, USCIS could not always schedule most recently filed applications." *Id.* ¶ 29. As Judge Spero explained, "If USCIS is unable to schedule interviews as to . . . applicants . . . whose applications have been pending for less than 21 days[]

and is simply adding those applications to the backlog, there may be a material dispute of fact as to whether LIFO creates any greater disincentive to filing non-meritorious applications than" processing applications in the backlog from oldest to newest. *Munoz-Barba*, 2024 WL 2818850, at *15. "Narrow and targeted discovery aimed at this question is therefore necessary to allow for effective judicial review of Plaintiff['s] claims." *Id.*; *see* ECF No. 26-1 at 5 (Plaintiff's request for "[r]eports showing effectiveness of the LIFO in reducing non-meritorious applications"). Moreover, while Defendants' declarations support their argument that "some" applications are being adjudicated via the second track, from oldest to newest, they provide no information showing how many asylum officers are assigned to this track or the rate of adjudicating these pending applications. ECF No. 20-1 ¶ 31.

Defendants' motion for summary judgment hinges on their claim that the two-track method for adjudicating asylum applications is a rule of reason. Plaintiff is entitled to limited discovery to test whether, under the current circumstances, this method serves its intended purpose and whether it provides a meaningful method for adjudicating backlogged asylum applications. *See Munoz-Barba*, 2024 WL 2818850, at *16. For example, discovery regarding the rate at which the San Francisco Asylum Office adjudicates backlogged asylum applications could be critical to rebut Defendants' claim that the second track is a reasonable approach to addressing backlogged applications oldest-to-newest. *See* ECF No. 26-1 ¶ 6. The undersigned accordingly concludes that Plaintiff has satisfied the Rule 56(d) requirements and may seek discovery necessary to oppose Defendants' motion for summary judgment. *See Fam. Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008). However, Plaintiff's descriptions of the discovery he seeks are overbroad: he wants to depose Mr. Lassen and Ms. Lehman and to obtain wide-ranging policy memorandum and operating procedures, information regarding annual asylum fees, and documents pertaining to the creation of an asylum office in Seattle. *See* ECF No. 26-1 at 3-7, 13-14. The parties are accordingly ordered to meet and confer no later than July 15, 2026 to

//

//

//

narrow the scope of Plaintiff's discovery requests.  They shall file a joint status report by July 22, 2026 regarding the status of their negotiations.

**IT IS SO ORDERED.**

Dated: July 1, 2026

_____
LISA J. CISNEROS
United States Magistrate Judge

United States District Court
Northern District of California